### [260] COTTON v. THE STATE.

*Son assault demesne* is no excuse if the retaliation be excessive, and bear no proportion to the necessity or provocation received; and it is matter of evidence whether the retaliation be excessive and out of all proportion to the necessity or provocation.

Where the defendant, in support of a motion for a new trial, filed his own affidavit and that of another that two of his witnesses who had been regularly subpœnaed were present in court when the trial commenced, but wrongfully absented themselves, so that they were not to be found when called to testify, whereby, etc.: *Held,* That the defendant's affidavit should have stated that he could not have proved the same facts by others present, and that the affidavits of the witnesses, showing the facts to which they would testify, ought to have been produced; or if their affidavits could not have been procured, that fact should have been made to appear.

When a party has announced himself ready for trial, it is in general too late to move for a continuance. But where he is surprised by the unauthorized withdrawal of his witnesses after the trial has commenced, the better practice seems to be then to apply for a continuance or postponement of the trial; and should the court unadvisedly refuse the application, such refusal might be made the ground of a motion for a new trial.

*It seems* that the question whether an assault be an aggravated assault or not depends on the testimony, and is a matter for the jury to find, the indictment being the same in both cases. (Note 52.)

An indictment will be sufficient in respect of the description of the person injured if it be certain to a common intent; if it be sufficiently explicit to inform the prisoner who are his accusers.

If the name of the person injured be correctly stated where it occurs the first time in the indictment, subsequent statements of it, in which there is an apparent variation, may be rejected as surplusage. (Note 53.)

Appeal from Walker. The appellant was indicted at the Spring Term of the District Court, 1849, for an assault and battery. The name of the person upon whom the injury was alleged to have been committed occurred three times in the indictment. In the first place his name was stated as "Francis Hubble," in the second as "the said Francis Hubles," and in the third as "the said Francis Hubbles."

At the trial it was proved by Francis Hubble, the witness on [261] behalf

of the State, and the person upon whom the assault and battery were alleged to have been committed, that the defendant, who was a youth of but sixteen years of age, was making sport of an intoxicated old man in the bake-house of Hubble; that Hubble, thinking, as he said, that the defendant was using the old man too roughly, told him that if he did not desist he would put him out of the house; that the defendant thereupon cursed Hubble, and told him that if he did not mind he would serve him in the same way; that Hubble then advanced hastily to the defendant; that they seized each other in an excited, angry manner, the defendant being against the wall; that the defendant then seized a glass bottle and struck Hubble on the head, breaking the bottle and causing a copious effusion of blood; the defendant then ran out of the house into the street, Hubble pursuing him. A witness introduced by the defendant testified that he, the defendant, struck Hubble with the bottle as soon as the latter came within two feet of him, and before Hubble touched him.

The jury found the defendant guilty, and assessed his punishment at a fine of $25, and imprisonment for three months.

The defendant moved for a new trial, and in support of his application filed his affidavit setting forth, in substance, that he had caused two witnesses to be subpœnaed, naming them; that they were about the court-house until the cause was called for trial, and had by their conduct induced him to believe that they would be present in court when the trial should come on; that after the trial had been commenced they withdrew themselves, by which he was deprived of their testimony; that he could have proved by the witnesses that said Hubble or Hubbs made the first assault upon him, and that he acted in self-defense; and that he can obtain their testimony at another trial. This affidavit was also sworn to by one T. F. Cotton. The court overruled the motion for a new trial. The defendant then made a motion in arrest of judgment, which was also overruled, and he appealed.

[**262**] *Sneed & Oldham,* for appellant. That the judgment in this case should be reversed we have not a doubt. In the first place the evidence shows that the first assault was committed by Hubble. He advanced upon Cotton in a hostile manner. It was not necessary that Cotton should have waited until he was first struck before being justified in striking in self-defense. (1 Russell on Crimes, 610.) Although the fight took place in Hubble's house, that fact did not justify Hubble's conduct. He should have first ordered Cotton to leave the house. If the latter had persisted in remaining, he might then have been put out. But this he did not do. (The State *v.* Jacob Lazams, 1 S. Car. R., 34; 1 Russell on Crimes, 609, and case cited in note *b*.) Hubble therefore commenced the fight, and was alone responsible for the consequences which resulted.

The facts contained in the affidavit of the appellant, showing that the witnesses who were summoned to testify in his behalf withdrew themselves from the court during the progress of the trial, certainly present a strong case for a new trial, and in New York has been decided to be a good cause for one. (Tilden *v.* Gardiner, 25 Wend. R., 653.) The Act of 1848 (page 229, sec. 57) provides "that if any person shall assault another or in any way break the peace, upon complaint and conviction thereof before any justice or mayor of any city or town, he shall be fined not exceeding one hundred dollars or imprisoned not exceeding thirty days," &c. Under this statute it is clear that the punishment on conviction must be either fine or imprisonment, and not both, and if imprisonment, for a time not exceeding thirty days. This offense, if offense it was, was committed under this section of the act; for it cannot, it is conceived by us, be made an aggravated assault under the 58th section.

By inspection of the indictment it will be perceived by the court there is no such description of the person upon whom the assault and battery were committed as would enable the party to plead the conviction in bar of another indictment. The name of the person is stated in three places in the indictment, and is different in each.

## Cotton v. The State.

WHEELER, J. It is objected to the conviction—1st. That the original assault was not committed by the defendant. 2d. That the misconduct of the defendant's witnesses entitled him to a new trial. 3d. That the punishment should have been fine or imprisonment; and that both fine and imprisonment cannot be inflicted for this offense. 4th. That there is no sufficient description of the person upon whom the injury was committed.

In respect to the first objection, it is to be observed that in order to make a previous assault upon the defendant by the witness a justification for that committed by the defendant upon him, it must appear that the striking by the defendant was in his own defense, and was *in proportion to the attack made.* Son *assault demesne* is no excuse if the retaliation by the defendant be excessive and bear no proportion to the necessity or provocation received; and it will be matter of evidence whether the retaliation by the defendant was excessive and out of all proportion to the necessity or provocation. (2 Stark. Ev., 40; 1 East., C L., 400; 1 Russell on Cr., 610.) It was for the jury, therefore, to determine from the evidence whether the resistance of the defendant to the assault of the witness (if it was an assault, under the circumstances, for him to put the defendant out of the house) was excessive and disproportionate to the necessity. Having done so by their verdict, we see nothing in the evidence to induce us to disturb it. While the law (it has been said) permits men to defend their persons, it is careful to restrain the indulgence of an ungovernable and revengeful spirit. And the jury may have believed, and justly, that the violence of the defendant was not employed for his own defense merely, but for the gratification of a wicked, malevolent, and revengeful spirit. If the evidence justified this belief—and we are not prepared to say that it did not—the previous assault of the witness, as we have seen, afforded no justification or excuse to the defendant.

The alleged misconduct of defendant's witnesses is [**264**] shown only by an affidavit made by himself and another on the day after the trial. It does not state that the defendant could not prove the same facts by others present. (8 Mis. R., 606.) But if it did, it ought to have been accompanied by the affidavit of the witnesses, showing the facts to which they would testify; or if their affidavits could not be procured, that fact should have been made to appear. (Madden *v.* Shappard, 3 Tex., R.; Edrington *v.* Kiger, *ante*, 89.) The affidavit does not disclose sufficient matter to have justified the court in awarding a new trial. When the absence of the witnesses was discovered, the better course would have been immediately to have moved the court for a continuance or postponement of the trial to enable the party to obtain the attendance of his witnesses. If they were regularly subpoenaed, he might have taken an attachment against them and thus compelled their attendance. The court, in its discretion, if the justice of the case seemed to require it, would doubtless have granted the application. When a party has announced himself ready for trial, it is in general too late to move for a continuance. (1 Browne R., 240; 8 Johns. R., 437; 1 Penn. R., 280; 2 Id., 713.) But where he is surprised by the unauthorized withdrawal of his witnesses after the trial has commenced, the better practice seems to be then to apply for a continuance or postponement of the trial; and should the court unadvisedly refuse the application, such refusal might be made the ground of an application for a new trial. (2 Bailey R. 576; 1 Id., 25; Id., 545; 4 Day R., 471; 3 Wend. R., 377.)

The objection to the assessment by the jury of the punishment is not, it is conceived, well founded. It was for the jury to determine from the evidence the character of the assault. They found it of an aggravated character, and proceeded to assess the punishment under the 58th section of the act of 1848, (p. 229,)which provides that if the offense be of an aggravated nature, upon conviction the offender may be punished by fine not exceeding $200 and imprisonment not exceeding six months.

As to the remaining objection to the conviction, the description of the person injured, certainty to a common intent in this respect is, it is said, all that the law requires; and if the description be sufficiently explicit to inform the prisoner who are his accusers, the indictment may be supported. (1 Chit. Cr. L., 211.) If a party be known by one name as well as another, he may be described by either, (Id., 246;) as where an indictment for stealing laid the property stolen as belonging to Steven Harris, and it appeared that the name of the owner was Harrison, but he was sometimes called Harris, it was held to be no variance. (Ib., n. a; 1 Overt. R., 434.) If the party here was known by two names, he was well described by either. But if his name was Francis Hubble, as from the statements of facts it appears to be, it was correctly stated in the first instance, and the subsequent statement of it, in which the apparent variation occurs, was unnecessary, and may be rejected as surplusage. In the subsequent statements it was sufficient to have used the christian name only, or to have referred to the name by the use of a pronoun. (1 Chit. Cr. L., 216, 217; 4 Pick. R., 252.) We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.

Note 52.—Gardenheir v. The State, 6 T., 348; Givens v. The State, 6 T., 344; Reynolds v. The State, 11 T., 120; Norton v. The State, 14 T., 387; Johnson v. The State, 17 T., 515; The State v. Lutterloh, 22 T., 210.
Note 53.—Crain v. Griffis, 14 T., 358; Musquez v. The State, 41 T., 226.

